If you do, you're going to get the 10-year mandatory minimum. Do you understand that? And the judge goes over that with the defendant time and time again. There's no indication in the plea agreement that the U.S. attorney is going to ask for an upward departure based upon kidnapping and rape. The counsel, you're arguing for something that's not really in Rule 11. The court did advise your client that he could be sentenced up to life during the plea colloquy. And now what you're arguing is something further, that the court needs to advise defendants of the specific basis, possible basis, for an upward departure or a sentence enhancement under the guidelines. I don't see that anywhere in the rules. And, in fact, it seems somewhat impracticable to request that of the district court judge before he's had a chance to see the pre-sentence report. Well, Your Honor, I don't have a case. I do have the rule. I do have 11B1A. And that's what it says. It says that the court needs to advise the defendant that he has discretion to depart from the guidelines under some sort of rule. He essentially said that in the plea colloquy. The second one. I know the reference the Court's referring to. But in the context of what's being stated, there's, again, no indication that this man is going to be held responsible for a rape or a kidnapping in the colloquy. There is an indication he may be found responsible for a mandatory minimum. Nobody knows what the circumstances are going to prove to be at that early stage of the – you know, at that point in the proceeding. It may be that there will be a basis for an upward departure or for enhancement. There may not be. It's critical that the defendant understand what the maximum possible sentence is under the statute. I think that the case law stating what's the maximum sentence is an apposite to this case. This isn't an illegal reentry case where we're talking the difference between a 2 and a 20-year maximum. This is a case where it's unheard of, at least in my experience, to start clobbering people over the head with uncharged rape and kidnapping charges, allegedly as part of a drug conviction. Let me inquire into that because you cite the Lawton case. And was there anything in your – in the plea agreement or anything in your discussions with the government that indicated that your client was I should tell the Court first that I was in counsel below. I don't know that that matters, but I wasn't. Well, I did read the plea agreement. Right. And I don't see anything in there that says that the – that your client was pleading guilty in exchange for the government's representation that those other charges, the rape or the – I guess I'm sort of coming at it from the other direction, Your Honor. I'm thinking that the government should have advised the defendant that if they were going to seek upward departures for kidnapping and for rape, that they should have told him and made that part of the plea agreement so that he understands what he's getting into. Now, we don't have a complaint about the leader thing. That's – I am stretching way too far on the leader thing. If the Court's not with me on this, then I guess we need to go to the credibility of what's testified to by Ms. Crawford. And the particular departure grounds that were involved – How can you go to the credibility? I mean, that's something we're not going to decide. Excuse me? I'm sorry? We're not going to pass on the credibility. You know, that's the district court's business. I do think it's clear error as far as finding that there was a rape, as far as finding that there was a kidnapping, especially when the court has to find it by clear and convincing evidence. There's very disputed evidence on this, you know, from many different sources. It's a question of who's believed. And the man who heard the testimony believes her. The fact that somebody disputed it doesn't make it less credible. The reason, Your Honor, that I believe it's less credible is there's no rape kit. There's a late report. There's ability to leave the scene. She never leaves the scene. She's a mile from her – There are things that I'm sure are argued to Judge Moye, and he heard, and he believed her. Your Honor, in light of the doubling of the sentence that was involved in the need to reach clear and convincing, I believe Judge Moye made a huge mistake in finding that there had been a rape and that there had been a kidnapping. According to the proof presented, there was no clear and convincing evidence of that, Your Honor. And the court certainly has the power to not accept that finding if it finds that the district court clearly erred. I would stand down and save time, if I may. Thank you. Thank you. Good afternoon. My name is Bernie Hubley. I'm an assistant U.S. attorney for the District of Montana. I appear here today on behalf of AUSA Judge Van De Wettering, who is temporarily on leave of absence from our office teaching at the Montana Law School. I have read the record here, and I would like to start my argument in response to Judge Wardlaw's question with regard to the plea agreement. I would direct your attention to the excerpts of record at page 29, which is part of the plea agreement and which was translated, according to the record, into Spanish for the defendant. And it says, and I quote, If the parties acknowledge the recommendation is not binding on the court and the United States reserves the right to seek upward departures against the defendant, the defendant will oppose those enhancements and may argue for any downward departure. Clearly, this defendant knew that the United States reserved the right to argue for upward departure. Whether he knew which specific departures is irrelevant. It's not required by Rule 11. And I believe the en banc decision of this circuit, Barrios-Guterres, clearly says that the district court need not outline the parameters of any departures. For reasons that are obviously understood by the court, that would be virtually impossible to do before the pre-sentence report is reviewed. Clearly, Rule 11 was complied with here. As I read Rule 11, there are four requirements. There must be an advice as to the mandatory minimum. There was. That's at page 58 of the excerpts. The maximum possible. That's at page 50 of the excerpts. The supervised release potential. That's at page 51 of the excerpts. And that there may be a departure from the guideline. You will find that in two separate instances, one at page 55 and one at page 58, where the court clearly says you may get a sentence you don't expect here. Consequently, I believe that Rule 11 was fully complied with and that the argument advanced by the defense in that regard is simply without merit. Moving to the next, I'll very briefly touch organizer leader. The law of this circuit is that the defendant need only supervise one person, but there must be five involved. Clearly, the pre-sentence report specifies as many as ten people involved in this conspiracy, and I would direct the court's attention to the pre-sentence report and in particular paragraphs 44, where the defendant is described as the negotiator. Paragraph 45, where he's described as the money man, the dope man. Paragraph 22, where he is, where he directed Samuel, a co-defendant, to hide narcotics on his person. That shows control of one person, and it is remarkably consistent and similar to directing his rape victim to conceal narcotics in her bra while he was making deliveries. I would further direct the court to the paragraph 32, where he was described as the person who always carried the drugs. Paragraph 42, where he was described by a co-conspirator as the leader of the group, and to paragraph 42, where he was described as the person who had access to the source in Mexico. That, I believe, carries the day for leader organizer. With regard to the other arguments raised, namely the 5K2.4, there is a requirement that the activity by the defendant there need facilitate the criminal activity. Here the rape victim was forced to accompany him and forced to carry the drugs on his person, on her person, at the direction of the defendant. Again, I direct your attention to paragraph 22, where he directed yet another co-conspirator, Samuel, to conceal cocaine on his person and carry the cocaine in the event they were apprehended, to distance himself from the drugs if apprehended. Clearly, that's what he was doing here. He was controlling the defendant as the leader and the organizer. He facilitated the drug conspiracy through the abduction. Once he abducted the victim, he then forced her to carry the drugs in this manner. Finally, with regard to the extreme conduct upward departure, the rape should be counted separately from the abduction. The court, the district court, clearly found the defendant to be incredible or uncredible in his testimony and found the victim to be credible. As Judge Noonan points out, there should not be a disturbance of that finding by the district court. The district court heard this woman testify, heard the defendant testify, made the credibility finding and found the defendant to be totally incredible, found that there was a rape on ten separate occasions. And I think it's very well written by Mr. Van de Wetering in the brief that the enhancement here is for the sake of the cruelty and cruelty alone. There need not be any connection with facilitating the crime. With regard to the extent, it's one of reasonableness. We've laid out in our brief a comparison of the kidnapping violation with a comparison of this violation and a comparison of sexual abuse. If you look at the numbers, the upward departure employed by the district court here is very comparable to those, and that translates down to being reasonable under the circumstances. And I think that with regard to the numbers, you come up with the same numbers as a kidnapping or a sexual abuse in terms of enhancement, and that's reasonable. That is my argument. If there are any questions, I'll be happy to answer them for the Court. And I thank you for your time. Thank you. Mr. Connery? On the leader, I'm not stating that there are – I did state this in this brief. I'm retracting the idea that there weren't five or more participants. But the co-defendant testified, said everybody would share the proceeds. There's testimony to that effect from a co-defendant, and there's no showing that this guy actually got a larger proceeds. And the leader is a man who's running around selling eight balls. I think that strains credibility to have a leader running around making multiple sales of eight balls, ten eight balls a day, according to the government witness. It just doesn't make sense. The next thing that doesn't make sense is to enhance this man's sentence based upon a rape and a kidnapping that should have been charged in state court that did not facilitate the offense. There's no way in the world this facilitated the offense of drug trafficking. It did not make easier. Facilitate make easier. I got a kidnap victim with me. That makes my selling drugs easier. How? It makes it more difficult. It wasn't like she was directed to go do something and the kingpin stays here, and she goes, does it, and he's, like, hidden. There's no installation in this. There's no leadership in this. And while accepting that it's not a very easy thing to go back and to look at what a district court judge did and to say, hey, this has not been established by clear and convincing evidence, I'm asking the court to do that because, you know, she's with this man for five days. She's a mile from her university. She can't walk there. She can't get a taxi. She testifies she's in the middle of nowhere. Well, maybe Missoula, Montana is the middle of nowhere, but she's in downtown Missoula, Montana. And he's hitting the shower. She's meeting all kinds of people. She's taken everywhere. There's other people in the same room with her or pretty close, and they come in. They see her on the bed with them. She's using drugs. She says she is, and everybody else says she is. She's a liar. She has a reason to lie. She has a reason to fabricate, to explain her absence from the university for five days to her father, who's removing her from the university, to be a victim instead of someone who is going to be prosecuted for selling drugs. Why wasn't she prosecuted? And a lot of the evidence, a lot of the claims made about the defendant are from people who are being prosecuted and who aren't worthy of belief, whereas Mr. Smoker spoke for the defendant, co-defendant, got nothing for this, as did another co-defendant, except perhaps the wrath of the judge who he was going to be sentenced by. All right. Counsel, will you tell us that? Thank you very much. The case of U.S. v. Berrigan v. Espinoza is submitted, and we will hear White v. Lambert.
judges: Wardlaw, Paez, Noonan